IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRENDA MOTE,                    )
                                )
                Plaintiff,      )
                                )
        v.                      )   No. 05 C 6212
                                )
AETNA LIFE INSURANCE COMPANY,   )
et al.,                         )
                                )
                Defendants.     )

## MEMORANDUM OPINION AND ORDER

By way of their response to the ERISA-based claim of Brenda Mote ("Mote") for long term disability benefits, brought against Aetna Life Insurance Company ("Aetna") and Arthur Andersen LLP Group Long Term Insurance Plan ("Plan"), defendants filed not only an Answer and Affirmative Defenses but also a Counterclaim brought by Aetna as the Plan fiduciary. After Mote then filed a motion to dismiss that Counterclaim, defendants sought and were granted leave to file Aetna's First Amended Counterclaim ("FACc"), with the motion to dismiss being allowed to stand as to the FACc.[1]

Here is how FACc ¶1 describes the Aetna claims for what it characterizes as "equitable relief to enforce the terms of the Plan":

Specifically, Aetna seeks, pursuant to 29 U.S.C.

---

[1] Defendants have now sought to tender a Second Amended Counterclaim. Because that proposed pleading does not alter the claimed substantive predicate for relief set out in the FACc, this opinion applies with equal force to the new proposal.

>§1132(a)(3) a constructive trust on funds in
>Plaintiff's possession that are the result of an
>overpayment of long-term disability benefits by Aetna.
>Alternatively, Aetna seeks reimbursement of the funds
>that are an overpayment of long-term disability
>benefits wrongfully retained by Plaintiff.

During the course of briefing on Mote's motion, the Supreme Court came down with a unanimous opinion in Sereboff v. Mid Atl. Med. Servs., Inc., 126 S.Ct. 1869 (2006), which defendants claim supports the viability of the FACc, while Mote argues otherwise. This memorandum opinion and order resolves the parties' dispute.

Sereboff confirms that Job's description of the ways of the Lord ("The Lord gave, and the Lord hath taken away"[2]) is equally applicable to the Supreme Court. Sereboff, id. at 1874 (quoting in part from Great West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)) initially confirmed that an effort "to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession'" is required in order for a breach-of-contract damages claim to be treated as restitutionary relief available to an employee benefit fund fiduciary under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). But having done so, Sereboff, 126 S.Ct. at 1875-76 then went on to reject any need for tracing such "particular funds or property" in any situation where a claimed equitable lien "by agreement" is involved.

---

[2] Job 1:21.

That, say defendants, confirms the viability of Aetna's FACc because the Plan at issue in this case expressly specifies that Aetna may recover any overpayment of long term disability benefits from Mote. Mote responds that <u>Sereboff</u> does not help defendants because what Aetna thus seeks to recover are the proceeds of Social Security benefits and, as such, are shielded from such recovery by 42 U.S.C. §407(a)("Section 407(a)")(emphasis added):

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and <u>none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process</u>, or to the operation of any bankruptcy or insolvency law.

It is noteworthy that the underscored second branch of Section 407(a), the portion dealing with actions that do not target the <u>future</u> payment of Social Security benefits, speaks of "moneys <u>paid</u>" as well as "moneys <u>payable</u>"--a clear reference to Social Security benefits already paid to the Social Security beneficiary. Not surprisingly, then, the caselaw dealing with that provision consistently treats, for example, an unsegregated bank account as "consist[ing] of Social Security benefits" (see, e.g., <u>Dionne v. Bouley</u>, 757 F.2d 1344, 1346 (1st Cir. 1985)).

That usage echoes another unanimous opinion by the Supreme Court, <u>Philpott v. Essex County Welfare Bd.</u>, 409 U.S. 413 (1973), which applied the identical provision of Section 407 to reject an

3

effort by the State of New Jersey to enforce a reimbursement agreement by reaching the bank account of the recipient of Social Security benefits. Here is the relevant language from the brief (less than five pages) and straightforward opinion in Philpott, id. at 415-16:

> On its face, the Social Security Act in §407 bars the State of New Jersey from reaching the federal disability payments paid to Wilkes. The language is all-inclusive: "[N]one of the moneys paid or payable...under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process...." The moneys paid as retroactive benefits were "moneys paid...under this subchapter"; and the suit brought was an attempt to subject the money to "levy, attachment...or other legal process."
>
> \*   \*   \*
>
> The protection afforded by §407 is to "moneys paid" and we think the analogy to veterans' benefits exemptions which we reviewed in Porter v. Aetna Casualty and Surety Co., 370 U.S. 159, is relevant here. We held in that case that veterans' benefits deposited in a savings and loan association on behalf of a veteran retained the "quality of moneys" and had not become a permanent investment. Id., at 161-162.

It is true that Philpott led to a prompt legislative change (42 U.S.C. §1383(g)) that authorized such recapture when it is sought by States or their political subdivisions. But that change by Congress really reconfirms that the unmodified language of Section 407(a) as it was construed in Philpott continues to apply to private parties such as defendants.

Mote's able counsel has mustered a host of cases that uniformly provide immunity to Social Security beneficiaries

4

against efforts such as that undertaken by defendants here. Most recent among those cases is Ross v. Pa. Mfrs. Ass'n Ins. Co., No. Civ. A. 1:05-0561, 2006 WL 1390446 (S.D. W.Va. May 22), which first rejected most of an individual plaintiff's challenge to the insurer's counterclaim on the authority of Sereboff (id. at *7) but then went on at *8 to dismiss that counterclaim as expressly prohibited by Section 407(a).

Defendants' brief footnote response regarding Section 407(a) at their Supp. Mem. 4 n.4 is ironic (presumably unintentionally so) in that regard. In the text of defendants' submission they argue correctly that Sereboff eliminates the need for tracing, so that any funds in Mote's hands are treated as subject to an equitable lien. But as to Section 407(a)'s treatment of any funds in Mote's hands as being attributable to their Social Security source, also without any need for segregation or earmarking (and hence also without any tracing requirement), Aetna's footnote poses this nonsequitur:

> Plaintiff also argues that Defendants seek an equitable lien on Plaintiff's Social Security Disability funds and that such liens are improper under 42 U.S.C. §407. However, 42 U.S.C. §407 has no application to this case because Defendants do not seek an equitable lien on Plaintiff's Social Security Disability funds.

That's obviously just not so--instead the funds on which defendants seek to impose an equitable lien are exactly the same funds that the law labels and treats as Social Security funds that are taken out of reach by Section 407(a).

5

In sum, then, Mote's motion to dismiss the FACc must be and is granted. Although this Court grants leave to defendants to file the Second Amended Counterclaim because it has solely sought to add Fed. R. Civ. P. 13(a) and 29 U.S.C. §1367(a) as jurisdictional sources, that new pleading carries forward the same fatal flaw as the FACc, and it too is dismissed.

                                       */s/ Milton I. Shadur*
                                    Milton I. Shadur
                                    Senior United States District Judge

Date: June 26, 2006